UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ORION MARINE CONSTRUCTION, INC.**, as owner of Barges M-1801, M-1802, M-1701 and M-1402, their engines, tackle, appurtenances, equipment, etc., in a cause of exoneration from or limitation of liability,

    Petitioner,

v.                                                                                          Case No: 8:15-cv-1136-MSS-TGW

**ELIZABETH CARROLL,**

    Defendant,

**DANIEL F. BOWEN,** *et al.*,

    Claimants.

_____/

## ORDER

**THIS CAUSE** comes before the Court for consideration of Claimants' Joint Motion for Partial Summary Judgment on Affirmative Defense Based on Florida Statute § 337.195, (Dkt. 727), and Petitioner's response in opposition thereto, (Dkt. 730); and Petitioner's Motion for Summary Judgment, (Dkt. 728), and Claimants' response in opposition thereto. (Dkt. 729) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **DENIES** Claimants' Joint Motion for Partial Summary Judgment and **DENIES** Petitioner's Motion for Summary Judgment.

I. BACKGROUND

In 2011, Orion Marine Construction, Inc. contracted with the Florida Department of Transportation ("FDOT") to rebuild the Pinellas Bayway Bridge in Pinellas County, Florida. (Dkt. 1 at ¶ 12) Construction began in February 2012, and the bridge was completed in November 2014. (Dkt. 625-2) As part of the project, Orion used four barges—M-1801, M-1802, M-1701, and M-1402—to drive concrete piles into the ocean floor. (Dkt. 1 at ¶ 13) The piledriving took place in two stages: from February 2012 to October 2012, and then from March 2013 to April 2014. (Dkt. 704-2 at ¶¶ 7-9)

The agreement between FDOT and Orion contained a series of requirements governing Orion's piledriving activities. (Dkt. 728-1 at ¶¶ 3, 8) Orion was subject to FDOT's Standard Specifications for Road and Bridge Construction. (Id. at ¶ 13) Section 455-1.1 of the Standard Specifications required Orion to "take all reasonable precautions to prevent damage" to "existing structures" in "close proximity" to the piledriving. (Dkt. 729-1 at 516) Section 455-1.1 also required Orion to "[m]onitor" structures for "settlement" and vibrations, including the structures "shown in the plans." (Id. at 517) To implement the latter requirement, Orion prepared a Settlement/Vibration Monitoring Plan. (Dkt. 729-2) This document stated that Orion would "monitor[ ] for settlement" twenty-three houses near the Pinellas Bayway Bridge. (Id. at 1) Orion likewise agreed to "provide" "settlement/vibration monitoring" of these structures. (Dkt. 729-3) The monitoring would take place "on a weekly basis throughout pile installation and for two weeks after pile driving [was]

2

complete." (Dkt. 729-2 at 1) Orion contracted out the vibration monitoring to Tally Engineering, Inc. (Dkt. 728-1 at ¶ 14)

The Parties dispute whether Orion complied with its contractual obligations concerning vibration monitoring. Claimants cite the testimony of Angelo Soldati, a project manager for Orion who served as the company's Rule 30(b)(6) representative. (Dkt. 729 at 5 n.6; Dkt. 728-2 at 7:4-19) Soldati testified that although vibration monitoring was performed at "some of the properties" listed in the Settlement/Vibration Monitoring Plan, monitoring was not conducted at all of the residences. (Dkt. 728-2 at 46:7-47:10) Soldati also explained that (i) the Settlement/Vibration Monitoring Plan was "a requirement in the contract to submit to FDOT prior to starting the pile driving," and (ii) Orion's agreement to "provide" "settlement/vibration monitoring" of the residences came "from the FDOT standard specs." (Id. at 23:13-22; 45:9-46:5)

Orion, for its part, relies on the declaration of Jordan West, another Orion project manager. (Dkt. 728 at 3) West states that approximately once a month, an FDOT project manager evaluated "the timeliness and completeness of Orion's document submittals, the timeliness of Orion's completion of the project, Orion's environmental compliance, and Orion's conformity with the [c]ontract [d]ocuments." (Dkt. 728-1 at ¶ 20) According to West, Orion "consistently" received twenty out of twenty possible points for its "conformance with [c]ontract [d]ocuments." (Id. at ¶ 22; see also Dkt. 731-1) West thus concludes that Orion "substantially complied" with the contract documents. (Dkt. 728-1 at ¶ 23)

3

Between March 2012 and June 2014, nine local residents complained that the vibrations caused by Orion's piledriving had damaged their homes. (Dkt. 627 at 5) Beginning in December 2014, Orion began receiving similar property-damage claims "in bulk." (Id. at 17) As a result, Orion filed this limitation action under the Shipowner's Limitation of Liability Act, which permits shipowners to limit their liability for certain claims involving a "vessel" to "the value of the vessel and pending freight." 46 U.S.C. § 30505(a). Following the commencement of this action, 248 residents filed claims alleging damage to their homes from Orion's piledriving. According to the residents, Orion "improper[ly]" and "negligently" performed the piledriving, resulting in physical damage to their homes and a reduction in their property values. (E.g., Dkt. 348 at ¶¶ 5-8)

The Parties have now cross-moved for summary judgment as to Orion's affirmative defense under Fla. Stat. § 337.195. (Dkts. 727, 728) Section 337.195(2) provides that "[a] contractor who constructs, maintains, or repairs a . . . bridge . . . for the Department of Transportation is not liable to a claimant for . . . property damage . . . arising from the performance of the construction, maintenance, or repair if, at the time of the . . . property damage . . . , the contractor was in compliance with contract documents material to the condition that was the proximate cause of the . . . property damage." Fla. Stat. § 337.195(2). Orion contends that Section 337.195(2) exempts it from liability for its piledriving activities because "FDOT's own engineers . . . consistently found Orion to be compliant throughout the Project, including those phases involving piledriving." (Dkt. 728 at 4) Claimants offer two arguments in

4

response: (i) federal maritime law preempts Section 337.195(2), which is therefore inapplicable in this limitation action, and (ii) there is a genuine dispute of fact as to whether Orion complied with the contract documents related to piledriving. (Dkt. 727 at 1; Dkt. 729 at 4-6)

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial.

5

Porter v. Ray, 461 F.3d 1315, 1320-21 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III.  DISCUSSION

Federal maritime law does not preempt the exemption from liability in Section 337.195(2). Nevertheless, summary judgment is inappropriate because there are genuine disputes of fact as to whether Orion complied with contractual provisions relevant to its piledriving activities.

### A. Maritime Law Does Not Preempt Section 337.195(2)

Claimants contend that Section 337.195(2) is inapplicable as a matter of law because it is preempted by federal maritime law. (Dkt. 727 at 1) Specifically, Claimants argue that the "complete release from liability" conferred by Section 337.195(2) is "directly contrary to the general maritime rule of comparative fault." (Id. at 7) In light of this alleged conflict, Claimants seek a ruling that "the general maritime law rule of comparative fault [ ] prevail[s]" over the exemption from liability in Section 337.195(2). (Id. at 8) Claimants' preemption argument fails.

6

"With admiralty jurisdiction comes the application of substantive admiralty law." Misener Marine Const., Inc. v. Norfolk Dredging Co., 594 F.3d 832, 837-38 (11th Cir. 2010). "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." Id. at 838. "As is the case with most general rules, there are exceptions to the usual supremacy of federal maritime law." Brockington v. Certified Elec., Inc., 903 F.2d 1523, 1529 (11th Cir. 1990). "[F]ederal courts sitting in admiralty should, according to the dictates of comity, acknowledge and protect state-created rights, even at times to the exclusion of an existing maritime law." Id. Accordingly, "[s]tate law may be applied to issues of a maritime nature if: (1) there is not an act of Congress that speaks to the issue; (2) the state law does not contravene a characteristic feature of the general maritime law; and (3) the state law does not interfere with the proper harmony and uniformity of maritime law." Misener Marine Const. Inc., 594 F.3d at 839.

The Parties have not identified—and this Court cannot locate—any "act of Congress that speaks to the issue" of whether Orion is immune from liability for its piledriving activities based on its alleged compliance with the FDOT contract documents. Id. The preemption inquiry thus turns on two questions: (i) does Section 337.195(2) "contravene a characteristic feature of the general maritime law," and (ii) does that provision "interfere with the proper harmony and uniformity of maritime law"? Id. The answer to both questions is no.

As noted above, Section 337.195(2) states that "[a] contractor who constructs, maintains, or repairs a . . . bridge . . . for the Department of Transportation is not liable

7

to a claimant for . . . property damage . . . arising from the performance of the construction, maintenance, or repair if, at the time of the . . . property damage . . . , the contractor was in compliance with contract documents material to the condition that was the proximate cause of the . . . property damage." Fla. Stat. § 337.195(2). Claimants contend that this provision "directly conflicts" with a characteristic feature of maritime law—the doctrine of comparative negligence. (Dkt. 727 at 8) "Maritime law recognizes the doctrine of comparative negligence." Wiegand v. Royal Caribbean Cruises Ltd., 473 F. Supp. 3d 1348, 1352 (S.D. Fla. 2020). "[C]omparative negligence is a theory of negligence where the plaintiff is entitled to damages even if he or she is found to be more at fault than the defendant, but damages awarded will be reduced by [the] percentage of fault attributable to plaintiff." Id.

There is no conflict between the exemption from liability in Section 337.195(2) and the principle of comparative negligence. Section 337.195(2) cuts off liability for an FDOT contractor where (i) a claimant suffers property damage "arising from the [contractor's] performance of the construction," and (ii) "the contractor was in compliance with contract documents material to the condition that was the proximate cause of the . . . property damage." Fla. Stat. § 337.195(2). Simply put, Section 337.195(2) bars liability for FDOT contractors in specified circumstances. There is no inconsistency between Section 337.195(2)'s categorical exemption from tort liability and the apportionment of damages based on the comparative negligence of liable parties. That is because comparative negligence is not implicated unless a defendant is liable under applicable substantive law. Thus, if a contractor is categorically exempt

8

from liability under Section 337.195(2), there is simply no liability to apportion between the parties. In that circumstance, comparative negligence has no role to play.

Florida law itself provides evidence that comparative negligence can coexist with Section 337.195(2)'s exemption from liability. "[T]ort recovery in Florida is governed by the principles of comparative negligence." Birge v. Charron, 107 So. 3d 350, 353 (Fla. 2012). Accordingly, under Florida law, "each party is apportioned liability based on its percentage of fault." Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 468 (Fla. 2005). As explained above, Florida law also exempts FDOT contractors from liability for property damage arising from bridge construction if they are "in compliance with contract documents material to the condition that was the proximate cause of the . . . property damage." Fla. Stat. § 337.195(2). Thus, under Florida law, comparative negligence exists alongside Section 337.195(2)'s exemption from liability. Claimants fail to explain why Section 337.195(2) cannot similarly coexist with maritime law's comparative negligence regime.

Nor have Claimants shown that Section 337.195(2) "interfere[s] with the proper harmony and uniformity of maritime law." Misener Marine Const. Inc., 594 F.3d at 839. "While it is well established that state law must yield to the needs of a uniform federal maritime system when inroads by the state cause disharmony, it is also recognized that uniformity simply for the sake of uniformity serves no inherent good." Brockington, 903 F.2d at 1531. In other words, "[t]he requirement of uniformity is not . . . absolute." Am. Dredging Co. v. Miller, 510 U.S. 443, 451 (1994). The Supreme

9

Court has recognized that "[i]t would be idle to pretend that the line separating permissible from impermissible state regulation is readily discernible in our admiralty jurisprudence, or indeed is even entirely consistent within our admiralty jurisprudence." Id. at 452. The Court concludes that Section 337.195(2) does not unduly interfere with the uniformity of maritime law.

    First, several states outside of Florida have adopted similar exemptions from liability for government contractors. See Burgess v. Colorado Serum Co., 772 F.2d 844, 845-46 (11th Cir. 1985) (noting that "the trend in other jurisdictions support[s] th[e] conclusion" that Alabama would adopt "the government contract defense"); 72 C.J.S. Products Liability § 97 (2021) ("A government contractor defense is recognized as a matter of state law in some jurisdictions."). These exemptions typically "insulate government contractors from liability for actions done in compliance with the government's specific contract specifications." 3 Lawrence G. Cetrulo, Toxic Torts Litigation Guide § 33:19 (2020). The adoption of the government contractor defense in multiple jurisdictions "suggest[s] [that] there is no reason why application of [Section 337.195(2)] in the maritime context would be a unique feature reserved solely to the State of Florida." Jones Superyacht Miami, Inc. v. M/Y Waku, 451 F. Supp. 3d 1335, 1342 (S.D. Fla. 2020).

    Second, although there is no authority "expressly stating that federal maritime law recognizes the government contractor defense," federal common law outside the maritime context permits federal contractors to assert the defense. Dennis v. Air & Liquid Sys. Corp., No. CV 19-9343-GW-KSX, 2021 WL 3555720, at *22 n.41 (C.D.

10

Cal. Mar. 24, 2021). "In essence, [this defense] allows the [federal] contractor to escape liability on the ground that it was 'just following orders.'" LaCourse v. PAE Worldwide Inc., 980 F.3d 1350, 1359 (11th Cir. 2020). The availability of the government contractor defense under federal common law provides further evidence that application of Section 337.195(2) in this action would not "interfere with the proper harmony and uniformity of maritime law." Misener Marine Const. Inc., 594 F.3d at 839.

Third, Florida has significant "[c]ountervailing state interests" in the application of Section 337.195(2)—"includ[ing] the interest in being permitted to regulate independently matters of local concern without interference by the federal government, and in having state-created rights and obligations protected and enforced in actions in federal court." Brockington, 903 F.2d at 1530. The legislative history of Section 337.195(2) indicates that the Florida legislature was concerned about the "financial burden" of "lawsuits and claims" on government contractors "who increasingly cannot afford to obtain the liability insurance required to participate in public construction projects." Florida Staff Analysis, H.B. 1681 (Apr. 4, 2005). To address this concern, the Florida legislature enacted Section 337.195, "limiting the civil liability for contractors and engineering consultants, under specific circumstances." Id. Accordingly, failure to give effect to Section 337.195(2) in this action would thwart the Florida legislature's interest in exempting government contractors from liability in specified circumstances.

In short, federal maritime law does not preempt Section 337.195(2) because (i) "there is not an act of Congress that speaks to the issue [in dispute]," (ii) "the state law does not contravene a characteristic feature of the general maritime law," and (iii) "the state law does not interfere with the proper harmony and uniformity of maritime law." <u>Misener Marine Const. Inc.</u>, 594 F.3d at 839.

### B. Factual Disputes Preclude Summary Judgment as to the Application of Section 337.195(2)

Having concluded that federal maritime law does not preempt Section 337.195(2), the Court next considers whether summary judgment is appropriate as to Orion's affirmative defense under that provision. The record reveals material factual disputes about whether Orion complied with contractual provisions governing its piledriving activities. Accordingly, the Court declines to grant summary judgment as to Orion's Section 337.195(2) affirmative defense.

Section 337.195(2) provides that an FDOT contractor who "constructs" a "bridge" "is not liable to a claimant" for "property damage" where (i) the property damage "aris[es] from the [contractor's] performance of the construction," and (ii) "the contractor *was in compliance with contract documents material to the condition* that was the proximate cause of the . . . property damage." Fla. Stat. § 337.195(2) (emphasis added). No Florida appellate court has interpreted Section 337.195(2). Nor has any federal court applied the statute in a reported decision. The plain language of the statute makes clear, however, that a contractor is not entitled to immunity under Section 337.195(2) unless it "was in compliance with contract documents material to

the condition that was the proximate cause of the . . . property damage." Id. Here, the "condition that was the [alleged] proximate cause" of damage to residents' houses was Orion's piledriving on the Pinellas Bayway Bridge. (E.g., Dkt. 348 at ¶¶ 5-8) Accordingly, summary judgment is inappropriate if there are genuine disputes of fact as to whether Orion complied with contract documents material to its piledriving activities.

The record reveals triable issues as to Orion's compliance with contract documents governing its piledriving. As noted above, the agreement between FDOT and Orion required Orion to comply with FDOT's Standard Specifications for Road and Bridge Construction. (Dkt. 728-1 at ¶ 13) Section 455-1.1 of the Standard Specifications obligated Orion to "[m]onitor" structures for "settlement" and vibrations, including the structures "shown in the plans." (Dkt. 729-1 at 517) Orion purported to implement the latter requirement by preparing a Settlement/Vibration Monitoring Plan. (Dkt. 729-2) The Plan stated that Orion would "monitor[ ] for settlement" twenty-three houses near the Pinellas Bayway Bridge. (Id. at 1) Angelo Soldati, an Orion project manager and the company's Rule 30(b)(6) representative, testified that Orion was required "to submit [the Plan] to FDOT prior to starting the pile driving." (Dkt. 728-2 at 23:13-22) Soldati also testified that "the FDOT standard specs" required Orion to provide settlement and vibration monitoring of the twenty-three residences. (Id. at 45:45:9-46:5; Dkt. 729-3) The monitoring would take place "on a weekly basis throughout pile installation and for two weeks after pile driving [was] complete." (Dkt. 729-2 at 1)

13

Orion points to evidence suggesting that FDOT "consistently" gave Orion twenty out of twenty possible points for its "conformance with [c]ontract [d]ocuments." (Dkt. 728-1 at ¶ 22; see also Dkt. 731-1) Claimants respond by citing Soldati's testimony that, although vibration monitoring was performed at "some of the properties" listed in the Settlement/Vibration Monitoring Plan, monitoring was not conducted at all of the houses. (Dkt. 728-2 at 46:7-47:10) This testimony supports a reasonable inference that Orion violated FDOT's Standard Specifications by failing to "[m]onitor" the structures "shown in the plans" for "settlement" and vibrations as required by the terms of the contract. (Dkt. 729-1 at 517) Thus, because a reasonable factfinder could conclude that Orion was not in compliance with contract documents material to its piledriving activities, summary judgment is inappropriate as to the Section 337.195(2) affirmative defense.

## IV.  CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Claimants' Joint Motion for Partial Summary Judgment on Affirmative Defense Based on Florida Statute § 337.195, (Dkt. 727), is **DENIED**.
2. Petitioner's Motion for Summary Judgment, (Dkt. 728), is **DENIED**.
3. The Parties shall file, within **fourteen (14) days** of the date of this Order, a joint status report indicating how the Parties believe this matter should

proceed in light of the denial of the Parties' cross-motions for summary judgment.

**DONE** and **ORDERED** in Tampa, Florida, this 12th day of January 2022.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person